Good morning, Your Honors. May it please this Court. Like generations of Texans before them, my clients seek to rent out their homes on a short-term basis. The City of New Braunfels makes this traditional residential use of property illegal. But the question before this Court today is not whether or not that ordinance is ultimately constitutional. The narrow question presented here is whether or not such ordinances and such restrictions are subject to any meaningful review in state or federal court. Under this Court's precedents, private property owners, even under rational basis scrutiny, typically have the opportunity to present evidence to rebut a government's claim that a restriction on their private property. We have largely ignored this Court's precedent and instead held that even at the motion-to-dismiss stage, a city could dismiss a challenge to a zoning ordinance simply by claiming that its ordinance served a rational basis. This approach turns the 12b6 standard on its head and ultimately would make it virtually impossible for any challenge to any zoning ordinance to ever survive a motion to dismiss. We therefore ask that the District Court's precedent be reversed and that my clients finally have an opportunity to litigate their claims in the District Court. What kind of evidence would you put in on remand? I think we would put in the same sort of evidence that was put into the record in the Third Court of Appeals in Texas in Zatari. We would look at the City's evidence as to nuisance complaints, as to crowding complaints, the evidence that was before the City Council when it ultimately did the workshops that they talked about. Those sorts of things would be the type of evidence that we would put into the record. From experience doing these sorts of cases, you're talking about probably a dozen interrogatories and RFPs and maybe a deposition or two to fully develop the record in this case. Now, the City has put forward several arguments as to why this Court's traditional evidence-based approach to rational basis cases would not apply in this case. I'd like to talk about just a few of them here. First, they argue that evidence simply doesn't matter in zoning cases when you're removing traditional vice uses or common law nuisances from residential areas. For example, strip clubs or salvage yards from residential areas. But the problem with that, Your Honors, is that short-term rentals are not traditional vice or nuisance uses at common law. As the City now concedes in its briefing and as the Texas Supreme Court has previously noted, short-term rentals are a traditional residential use that have been part of New Braunfels communities for decades. This is not a traditional nuisance or vice. And whenever the City goes outside of regulating common law nuisances or common law vices, that's precisely whenever this Court has traditionally allowed property owners to present some evidence to rebut the City's claims. And that's exactly what we're asking for here. The same opportunity that property owners had in McKeska or in Mahone or the same opportunity that the casket sellers had in St. Joseph is to simply build out a record and have our claims adjudicated on that record. The second argument that the City raises is that evidence doesn't matter in this case. It doesn't matter whether or not short-term rentals actually cause nuisances because staying at a home for less than 30 days is just different than living there for 20 years. But even under the Supreme Court's decision in Euclid, which first introduced the idea of residential character as falling within the police power, the Court didn't use the term that broadly. If you look at the decision in Euclid, the Supreme Court said that that was shorthands for things like contagion, fire, traffic, crowding, the things that traditionally would be— Well, that may have been the way Euclid was interpreted, and I have to say I think the Spann case is remarkable. But subsequent case law in Texas and in the Fifth Circuit have gone beyond that, right, in allowing regulations? I think that the biggest difference that happened after Spann under Texas law, but even under federal law, is really explained in the case Lombardo, which we cite, which was decided after Euclid in Texas. And it said that when you're talking about something like residential character, in that case it was a gas station. You don't have to look to determine whether or not this individual gas station is a really clean or a really safe gas station. We just know that at some point gas stations are going to do things like crowding, fire, contagion, commercial uses, and those are slightly broader. But the court has never said that residential character is anything that differs in any way from, you know, living for 20 years with a wife and kids and family in a neighborhood, because if that were the case, then they could just as easily ban long-term rentals, because a long-term rental is different than living there for 20 years. Neither party cited a case from this court called Jackson Court Condominiums v. City of New Orleans. I draw this to your attention, 8, and if you each want to file supplemental letter briefs, you may, 874 F. 2nd 1070, 5th Circuit 1989. And that one, the court did in fact have some re-judgment procedure in that one, but that had to do with the City of New Orleans banning elegant condos in particular parts of the city, and the court ultimately upheld that. So I don't know that's 1989, as I said, whether that's consistent with the recent trend of Texas law or not. Your Honor, I haven't read the case, and certainly we can provide supplemental briefing on that I would say that if you look at cases, even going back to Euclid, which dealt with apartments, typically when you're talking about high-rise condominiums or apartments, the interest you're looking at there is whether or not there's a crowding interest or a traffic interest or something else that would be borne out, again, by the data. And what we have in cases since then, like in McKeska and Mahone and other cases where this court has said that typically you would look at some sort of evidence to see if there's a meaningful difference tied into one of those things that falls within the police power. And we'll go ahead and we'll file supplemental briefing on that case. Doesn't this ordinance just apply to residential neighborhoods? In other words, single-family dwellings? Single-family and multifamily. I believe it applies to duplexes as well, areas that are one- and two-family uses. It wouldn't apply to any bigger housing units. I don't think that it would. My understanding of the way that the ordinance works, because it only applies in single- and two-family zone areas. But it's important to remember that what we're talking about here is whether or not we can rebut the government's claim that what has been traditionally recognized as a residential use, which the city doesn't contest as a residential use, which the Texas Supreme Court has held as a residential use, is now incompatible with residential use. By definition, a short-term rental is a single-family home that's rented for less than 30 days. That's what the use is. And so to remove all of those homes from single-family areas is to effectively ban the use throughout the city, unless you're putting it into a commercial structure of some sort. And so the other argument that they make in this case, and they make it repeatedly throughout the brief, is that somehow my clients don't have a property right here that's protected by the 14th Amendment because my clients purchased property after the original regulations for short-term rentals went into effect. I think that that is wrong as a matter of law. It's also misleading a little bit as to the facts in this case. First with regard to the law, the Supreme Court has been clear in cases like Palo Zolo that purchasing a property after an ordinance goes into effect does not preclude a constitutional challenge to the rationality of that ordinance. The court recently reaffirmed this holding in the Tyler v. Hennepin County case just this term. In that case, the statute went into effect in 1935. And the court said that that was not sufficient to change the nature of property. But that was quite a different case from this one. With regard to that particular holding and the argument that was raised there, just like in Palo Zolo and just like in this case, the city was arguing that the fact that a law was on the books when property was purchased changed the nature of property rights for the purposes of the 14th Amendment. And what the Supreme Court said in Palo Zolo and what the Supreme Court said again recently in the case that we cite in Tyler v. Hennepin County is cities don't get to redefine the term property in the text of the 14th Amendment simply by passing ordinances. Okay. I did not see that case that way. And so it's just wrong as a matter of law. It's also a little bit misleading as to the facts in this case. My clients did purchase property after the original ordinances went into effect. But at the time my clients purchased their property, the city was still regularly granting variances to allow people to rent their property short-term. In fact, the city's own staff recommended Mr. Marful and Mr. Olveda's properties for rezoning for short-term rental use. The city then denied that despite the fact that their own staff thought that it was appropriate. So at the time my clients purchased the property, they had every reason to believe that they'd be able to use it the same way that multiple other families use their properties in New Braunfels, the same way that people have used properties in New Braunfels. I just want to say Tyler wasn't about an ordinance. It was about... Statute. Yeah. It was about taxes and taking this person's house or condo and keeping all the money. It doesn't seem that related to zoning. Your Honor, because there was an argument raised in the case that's addressed I believe at page five of the opinion in the case where the court is dealing with the argument that was raised by the state that property rights are determined by the statutes that are on the books whenever you purchase the property. So what they argued was is that the tax statute that allowed them to seize the surplus was on the books when Ms. Tyler purchased her property, and therefore she had no expectation that she would not be subject to this regulation. That's the same argument that was made in Palazzolo. In Palazzolo, they argued that the wetlands statute that affected the property in that case was already on the books when the person purchased, and therefore that defined the scope of private property rights. It's not a zoning case. That's what I'm saying. Zoning is a different animal from taking all your money. That would go to the rational basis behind it. What we're talking about here is whether or not there's a property right. Let me... As far... We were also talking about whether you have the... What we're really talking about, as you said at the beginning, is whether you're allowed to introduce evidence or conduct discovery. And I took it... I thought it was very interesting that I think at least one of the people who is seeking permission here lives 50 feet from the entrance to Clitter Bond. Two of them live across the street from a series of commercial developments. One of them, I think, lives next door to a couple of properties that are already used for short-term rentals. Right? That's right. That's right, Judge Jones. So it seems to me that those facts alone cast into question the city's insistence that they're trying to preserve some particular character of... I mean, maybe they want everybody walking to Clitter Bond to say, oh, look at the elementary school and the kids playing happily outside in their front yards. No. That's right, Your Honor. And I think that the court's instruction, even going back to Euclid, that you would look at these on a case-by-case basis based on the circumstances of the locality, even when dealing with a zoning ordinance. Because again, the question really is here not whether or not this ordinance is ultimately constitutional, but whether or not we have any ability to present evidence to challenge the constitutionality of this ordinance. And those facts, Judge Jones, would be highly relevant to this case, particularly to the as-applied claims, but also potentially to the facial claims, because the fact that they allow so many short-term rentals in that area and other commercial uses in that area, I think undermines their claims that somehow these things would be inconsistent with residential use. I mean, is there any implication here that this zoning has something to do with protecting the local motels and the other people who have Airbnbs? Yeah, I think if you look at the Google Maps images that we provide that you can click on in our briefing for where these properties are located, there are many hotels in that But we don't know because we haven't had a chance to look at what the workshops discussed. We haven't had a chance to do any discovery about what's in the record, but that's always a potential in these sorts of cases, just like the potential was there in the St. Joseph Abbey case. I would like . . . That's a super different case. I was on that panel. I'm well aware of that case. It's a very different one. But the core element in that case is the same, which is whether or not whenever a right is restricted, the government's claim that it serves a rational basis should be decided based on the record. Well, I mean, the standard of rational basis, while harder for you, doesn't mean that it always wins. I think that was the point we made in that case. But that doesn't mean it always loses either, and it's a much harder standard to fight than the higher standards. It is. It absolutely is, Your Honor. Whenever we . . . if we get to go back down and have discovery and present evidence in the record, all of the thumbs are going to be on the scale on the side of the government. But the question before this court today is whether or not rational basis test is a test at all. Because if it's a test that doesn't require evidence, that can be dismissed at the 12b6 stage, just because the government claims that something serves a legitimate government interest. That turns the 12b6 standard on its head. That means that if there's a challenge to a zoning ordinance, we always lose. And any test where you always lose is not a test at all. And that's really the thread that ties all of the city's arguments together in this case. If you take all of their arguments together, that really ties them together that under their standard, there is no fact-based review whatsoever for zoning ordinances. The city simply always wins, and that's not how this court has treated rational basis or correct basis. That's also not how the cases have worked out. All right, you have an opportunity for rebuttal. Thank you. Mr. Green. May it please the court? This is a case where it takes but a momentary reflection to arrive at purposes that are both legitimate beyond dispute and that rationally support the city of New Broncos' ban on short-term rentals, and Judge Clement, you were right, in single-family and two-family districts. Short-term rentals are still allowed in multi-use, condos, apartments, mixed-use, where there's also retail, all over the city. This is just single-use and, excuse me, just single-family and two-family districts. The most, if we're going to talk about residential character, where residential character is the most significant. When zoning was first created, this whole concept of single-family . . . What about their as-applied argument? There may be certainly areas where this ordinance makes sense and shouldn't be totally thrown out, but what about their as-applied, given where they are, which is close to a lot of things that are commercial? The law is clear in the zoning context that you don't get to attack a zoning regulation based on what's on the edge. Otherwise, it would just chip away, chip away, chip away. Well, excuse me, but this one house is 50 feet away from the entrance to Glitter Bond. And that house . . . And you're talking about you have a rational basis for preserving the character, the single-family character, as a million visitors go into Glitter Bond every year? Absolutely. All right. Because that house is in a single-family or two-family district. That's where the edge is. And when that was established . . . I'll bet you could surprise the families there. I don't think they would be surprised, because when they purchased the house, they would have purchased it with the expectation . . . Yeah, but how many VRBOs are in that area? I don't know the answer to that. There are some. Certainly, because of the grandfather clause. Grandfather and exceptions, right? It's potential that there have been exceptions. But remember, when we talk about exceptions, these plaintiffs purchased the property knowing that in order to use it as a short-term rental, they would have to get an exception. They purchased the property knowing that the state of the law was they couldn't, and they were entirely dependent on the decision of the city whether to allow it there. Well, maybe they were thinking the city would be rational because it would be happy to have people operating VRBOs. If you think that VRBOs should be everywhere, then you have the right to think that way, but that's a legislative decision. The city gets to decide where should we allow VRBOs and where shouldn't we. All right. All right. Well, you were talking about the facial rationality of this zoning. Certainly. The test that I started with, the take but a momentary reflection, that comes from Mahone v. Addicts Utility District, which is the context of a rational basis test on a motion to dismiss. No, sir. That was a summary judgment. The Mahone case talked about how to apply it in a motion to dismiss, and that was the standard that said a momentary reflection. In other words, and this is important, just because the plaintiff is arguing on the rational basis test doesn't mean they get to advance past the motion to dismiss stage. And I will direct you on it to the UR-MAHR case. The what? The UR-MAHR LLC v. Jefferson Parish Council. Judge Jones, you were on that panel as well as you, Judge Haynes, and that was a case with a rational basis. The law was upheld under a rational basis test on a motion to dismiss. Give me the citation. 451 Appendix 397. Is that the one you're talking about? I believe that. YUR-MAHR? Yes. Okay. Yes, that's the one. Well, that's in your brief. Yes. And that was, that involved Phat City here in New Orleans, and the court looked at the character of that district, heard the arguments that were presented by the defendants as far as here's our rational basis, and the court concluded, we affirm the dismissal.      I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm not going to take close attention to federal appendix cases because they're not precedential. Fair enough, but the point is. The point is occasionally there are some where you can grant a motion to dismiss, and so give me a published case with a motion to dismiss where, with facts similar to this. The Nekralov v. City of Jersey case out of the 3rd Circuit, and in that case it was a fact, a short-term rental ban under the same concept at 30-day, line between the two, and the court affirmed the dismissal of that because the rational basis was easily satisfied based on reducing nuisance activity and protecting residential character. The same purposes that. Well what is there, yes, but they're saying there's no evidence that short-term rentals are more conducive to nuisance. That is, in fact, irrational to say that short-term rentals are more conducive to nuisance. That's factual to me. First of all, that says nothing about residential character, which when we talk about momentary reflection, we all understand. Well if these guys are across the street from, you know, some kind of retail or cafe or something, or if they're 50 feet from Schlitterbahn or they're next door to a short-term rental, what makes your idea rational? Because we want to stop the flow. We want to stop the increase, the pervasive increase. Well let me put it, okay, if the City of New Brownfields is that, with which I'm very familiar, because I grew up in San Antonio, if it is that determined to protect its pristine character, then perhaps it ought to ban tubing, limit access to Schlitterbahn, and ban all short-term rentals within the city. Under the rational basis test, we don't have to worry about whether there's other alternatives to accomplish the same goal. But we don't even know how many Airbnbs. If there were only 100 Airbnbs in a town that may have 60,000 people in it now, that might be a logical argument. But if there are 1,000 Airbnbs, but we don't know, do we? Because there's been no discovery. And because the answer to that is not relevant to the rational basis test, where we get to stop the flow, if it's at 100, we get to stop it at 100. If it's at 1,000, the city gets to stop it at 1,000. That is the legislative police power, where they look at it. We don't judge the wisdom. We don't judge the fairness. We simply ask, is there a rational basis to support this? And the judge can draw, Your Honor can draw from your common sense from your own experience in having neighbors who are long-term versus having neighbors who are short-term. I have a good deal of experience with this. And I do not see the problem that you were talking about. Well, certainly a lot of people do. And you can also draw on your own common sense judicial experience as far as when you're a tourist in the town versus when you're a resident. And when you're living in your own community, my parents lived in the same house for over 50 years. They knew everything going on in that neighborhood. We have all been in apartment complexes, places where we're more transient, and we simply do not get as plugged into the community. You don't think, you are talking about Airbnbs. Yes. Airbnbs are a huge feature of today's world. Yes. They are also one of the few ways in which people of modest means can make money off of real estate. Certainly. And they are, and Spann said, and you can argue Spann, but Spann was very eloquent in saying that the right to use your property is antecedent to the limitations government may place upon it. And the reasons for those limitations must be articulated. And as Mahone also said, there has to be a fit between the limitation and the public need. Spann also said the right to use property was unrestricted. And obviously that's not the law anymore. The law is Lombardo v. City of Dallas, which postdates the Texas' enactment of zoning statutes. Lombardo v. City of Dallas, 1934, Spann, 1921. So when we look at what testifies, it's not Spann. And in fact, when the Texas Supreme Court is looking at a zoning statute, they apply it under Lombardo, not Spann. Well, the reality of, and I won't blame Airbnb, but the reality of these short-term rentals is, in some situations, it's wonderful. Somebody can, as Judge Jones said, make some money. Someone can find a good place to stay in maybe a town that doesn't have a lot of hotels and so on. But then there's also these situations where people are having all these parties all night long. They've got music that's so loud. Nobody else on the street can sleep and so forth. So it's just, it's not a clear situation. It's not all terrible. It's not all great. I think everybody could agree on that if you just, you know, read the newspaper or whatever. Absolutely. And that's critical that there are benefits to short-term leasing and there are drawbacks. There are positive impacts and there are negative impacts. And that's precisely why it would be rational for a city to allow Airbnb across the board and rational to ban it. But the city also has a set of rules that govern the Airbnbs, does it not? Correct, yes. And one of those rules, no doubt, has to do with not disturbing the community. Another one probably has to do with not undue parking on the locale, right? Yes. Of course. But that is not the rational basis test saying, well, there are other ways to do it. Now, let me point, Your Honor, to the KVL-Stark, certainly. Let me go back to Nekraloff. And I'm just quoting. I have not read it. I'm quoting from the reply brief. But it said, plaintiffs conceded that the ordinance there served a legitimate government interest. Their only substitute process objection was that they believed that the mayor improperly influenced the passage of the ordinance. That is certainly a pellant argument, but that's not what, in fact, happened in the Nekraloff case. The Third Circuit first analyzed rational basis. It was in the next paragraph that the Third Circuit asked, and what are plaintiffs arguing, and then dispose of that. The Third Circuit absolutely held that a 30-day line between short-term rental and long-term use is rational, and so has the Fifth Circuit in Hignell-Stark v. Senior Rules. I wasn't talking about the 30-day line. We're not talking about that. But it's the same line we use, and it's the same line that was analyzed by the Third Circuit in Nekraloff. And it's the same line analyzed by the Fifth Circuit, this court in Hignell-Stark. Hignell-Stark struck down a short-term rental ban here in New Orleans. But it did so under the Commerce Clause, which under these sorts of questions, Judge Jones, that you are posing, that it would make sense that it would be struck down under Commerce Clause, but not rational basis. And this is important. The Fifth Circuit, that panel turned to the question. It was facially discriminatory under the Commerce Clause because you had to live there. Makes sense. But then they turned to the question of, are there non-discriminatory alternatives? In order to make that analysis, the court said two things. Number one, these bases for the short-term rental ban, residential character and reducing nuisance, are legitimate bases. That is the holding of the circuit. Number two, what are the non-discriminatory alternatives available? You can cap short-term rentals. This court has held it is a proper alternative. If you want to regulate the problems that short-term rentals create, to cap them, and that's what we've done, it's uncapped outside of single-family and two-family districts. But in single-family and two-family districts, we've capped it on where does it exist. That is the number. We're capping it. No more. That doesn't mean that every community in the United States can do that, though. Otherwise, as he says, rational basis is toothless. But when it's that apparent, when it takes just momentary reflection to see it, it does mean that. Well, why do you object to a little discovery? Because of the burdens of that. You mean, what burdens my eye? That was what was in fact said in the Mahone P. Addix Utility District. One of the reasons. That was a complicated case. It was also said in the Twombly case from the U.S. Supreme Court. One of the reasons why. Twombly is not, those are, that's ridiculous. That's a, that's either an antitrust or a qualified immunity. We're talking here about rational basis. We're talking about personal property rights. I disagree. It's ridiculous because that's the plausibility. Well, what's the best case you have for a 12B-6? 12B-6? You've got the Mahone v. Addix that sets the test. You have the Your Mark case that I've referred to. But Nekralov is the best case, Third Circuit, and it dismissed it as a matter of law. And let me say this, because this is important for the court to understand, to hear. No court in the entire country has struck down a short-term leasing regulation under rational basis. I'm not, we're not going to strike it down. We're not able to strike it. Okay, then don't make that an issue. The issue is just whether they get the right to put in some evidence to suggest that what you are doing has no rational basis. And some of those cases that considered the question did go to motion for summary judgment, but many of them dismissed the claim on motion to dismiss. I asked you for a citation and you gave me the Third Circuit and that's it. There, there is also, there have also been district courts that have struck it down. Well, we're a court of appeals. Excuse me, and I said struck it down. There have been district court opinions. The only two circuit court of appeals that I'm aware of that have looked at this short-term rental issue are the Fifth Circuit in Hignell-Stark and the Third Circuit in Nekralov. Both are in our favor. And Texas law. Texas law. In Texas law, you've got cases that have gone off. One of them was a preliminary injunction. One of them, and you know, I'm not, I'm not saying what the outcome of this will be. But what I, this is, I think we're on the cusp of a major societal change here. For a number of years, we have been talking about the new generation is not necessarily an ownership generation. It is a leasing generation. But the only way that people in, we are in a gig economy. More and more people have to be inventive, entrepreneurial. They can't count on working in a factory for 30 years and then getting a pension, right? Ownership of little pieces of property and making a little bit of money off of those is a, is a preeminent way to preserve the American dream. And zoning regulations can adjust to shifts in society, but the city still has the right to zone. As far as Texas law, there is no comparable motion to dismiss practice in Texas. It's a plea to the jurisdiction. A plea to the jurisdiction is a different standard. If a case in Texas did not survive a plea to the jurisdiction, it would certainly fail motion to dismiss. But not, not necessarily just because a case survives the plea to the jurisdiction doesn't mean it would survive a motion to dismiss. I take your point. But at the same time, none of them forbade the introduction of evidence. That's true because it wasn't under the plausibility standard that we have in federal courts. I'm talking about Texas courts. That's right, exactly. If there, if there were a comparable motion to dismiss practice, you would have seen it used in the Texas cases. And the statement that I made already about no court has struck this down on a rational basis, that's the case in Texas, Texas state courts. The only courts that have allowed the claim to go forward when it's been a question have been entirely on the retroactivity issue, which is why I raised the point that all of these plaintiffs purchased their property after the ban was enacted, because that takes this case out of the Za'atari, the Village of Tiki Island, and the City of Grapevine cases, where the courts held there was a narrow vested right based on reasonable investment-backed expectations. They don't have that. And that's why they get no benefit from the Za'atari, City of Grapevine, or the City of Tiki Island, because of that undisputed fact that they purchased after. Now, one last thing I do want to mention in my last couple of minutes, the Patel case is the, is an aspect of Texas law where they add a burdensome test to the existing rational basis. But the case law since then has been clear in confining the Patel burdensome inquiry to cases where the plaintiff was absolutely barred from his chosen profession. And that's the Live Oak Brewing case, the Title Max of Texas case, the Surf Vive case, the Garrett case, all of them. The plaintiff, for instance, could be a physician who didn't like that they couldn't do one thing, but they could still operate as a physician, no Patel claim. And so this is not a Patel case because of zoning regulations. They're still rational basis cases, right? Yes, that's right. They still require the rational basis, just like federal. That's right. And so we believe. Well, beyond federal. That's the whole point of Patel. Yeah, well, I bring up Patel to say that it does not change. The Texas Constitution analysis versus the U.S. Constitution analysis is no different. If this court holds that it was correct to dismiss under the federal. Give me an example. I mean, your argument is so extreme. Give me an example of any challenge to a zoning regulation under your rationale or what you think we ought to write that would go forward beyond the motion to dismiss stage. The Mikeska case, the Harris County. Tell me what the fact. Remind me the fact. The Mikeska case was about utility connections to houses on the beach. And the government said, but we need people to have access to the beach. And the court said, OK, we understand that's a legitimate basis, but we don't see any rational connection. The St. Joseph. Yeah, that's what St. Joseph is a great example. That one, the court looked at all these allegations by the defendants as far as why it was legitimate. And the court could not on a momentary reflection determine, OK, well, that's that's rational. So they had to go into evidence. And sure enough, once they looked at the evidence, all purported rational basis were stripped away until all that was left was economic. Suppose we well, you know, there's more than a than a than a whiff here of the possibility of economic protectionism. If, if, as I suggested, there is a large number of Airbnbs in the New Brownfields area or motel rooms and so on. And these five or six people just aren't allowed to join the parade because they didn't they came in too late. Economic protectionism is only relevant if there is no legitimate rational basis to support it. It doesn't matter if we are guided by economic protectionism, if we have a rational basis. It is only when you strip away all rational basis and negate them and all that you're left with is economic protectionism that you can strike down a law based on rational basis. OK, we have your argument. Mr. Weldon, thank you, Your Honor. No one says the nuisance abatement is not a legitimate government interest. The question in this case is whether or not the ordinance they passed, the classifications they've drawn, they've drawn are rationally related to that interest. He repeatedly says a moment's reflection is all you need to know that's true, but Zatari says otherwise. In the case where there was actually a record built out, we found out that all of the city's claims of a legitimate government interest in the Zatari case were not supported by the record evidence. So right now, a moment's reflection does not show that this is a nuisance abatement ordinance. He points repeatedly to the Mahone case. That was his best case for the standard on 12B6. This court reversed the motion to dismiss in Mahone. It was sent back down for the collection of evidence in that case. So if Mahone's his best case, we should be remanded to the district court to put forward evidence. He pointed to the Neckerlof case. As Judge Jones pointed out, however, in Neckerlof, the plaintiffs in that case conceded that the ordinance served a rational basis. They just had issue with the secret motives of a city council member. That's not what we're arguing here. We're not arguing that there was some sort of secret motive in this case. We're bringing a traditional police power, rational basis case. He points to the Hignell-Stark case. I think it is a shocking argument to argue that a case which struck down a short-term rental ordinance is precedent for the fact that short-term rental ordinances are per se rational. This court typically doesn't decide those sorts of issues. Sub salientio, I also think it's important to point out that in Hignell-Stark, the city of New Orleans did do multiple studies. The city of New Orleans had never allowed short-term rentals until, I think, two years before that case went into effect. So that's a very different case here. It had a full record. He points, he argues that Lombardo overturned Spann. Lombardo cites Spann. The Texas Supreme Court has cited Spann repeatedly after Lombardo. The Texas Court of Appeals cited Spann in the Zatari case. Spann remains good law and was cited in Lombardo, which is the preeminent zoning case in Texas. Spann is good law. It's good law for what proposition? It's good law for the proposition that property rights predate the police power. It's good law for the proposition that the police power is limited to regulating, under at least Texas law, purely incompatible uses, that the police power is based in nuisance. All of those things are still good law in Texas. Lombardo altered Spann in the sense that it says you can paint with a slightly broader brush. You don't have to say that this particular house is a nuisance or this particular gas station is dangerous because that's what Lombardo was about. But generally speaking, the police power is still in Texas limited to actually regulating incompatible uses. And you can rebut that with evidence. He pointed out on the Texas claim that Patel is limited to economic, sorry, the right to earn a living. That's not true. Patel expanded the proportionality test to apply to right to earn a living claims, but it was applied to property rights claims long before Patel was ever decided. It's still applied to property rights claims here today. If the test that they want to apply here were applied in McKeska and St. Joseph, those cases would not have come out the way they did. In St. Joseph Abbey, the state argued that there was a consumer fraud protection interest in that case. It was only once the record was produced in that case. And you could see that there wasn't a substantial difference in fraud between third-party sellers. There was just a disconnection between what they were claiming to be looking at and what was really there. I mean, these caskets. It's just a very different case from this one, regardless of how this case should come out. I just don't think every case should cite St. Joseph for their proposition that it can never be rational. Not every case, but I think it is important to point out if their 12B6 standard were correct, and for example, the state in that claim said, look, we don't want caskets leaking out into the ground and letting remains contaminate the soil. It was only after discovery that the plaintiffs in that case found out that the state of Louisiana allowed you to be buried in a bag. And so it was only after there was record evidence that they were able to rebut the government's claims. McKeska, again, open beaches, legitimate government interest. But in McKeska, what this court said was you have to be able to determine whether or not the actual classifications drawn and the actual ordinance is connected to that legitimate government interest. And that's the only thing that we're asking for here. Finally, I'll just close with this. In Yates v. Milwaukee, one of the first cases to ever interpret the 14th Amendment as it applied to property rights. This is three years after the 14th Amendment is ratified. The United States Supreme Court said that we cannot accept a government claim that a traditional use of property is a nuisance when it is not so in fact. That was the law when the 14th Amendment was ratified. It's still the law today, and we'd ask that the district court's judgment be reversed. Okay.